### In re HEREFORD.

(District Court, S. D. West Virginia. January, 1916.)

No. 822.

MORTGAGES &169—PRIORITIES—NOTICE.

> A debtor was requested by one of his creditors to make a statement of his financial condition. He informed the credit man of said creditor that he had given his brother a mortgage to secure a debt due him. T., an employé of the L. Co., another creditor, was present, but was charged with no specific duties as to the debtor's account, and subsequently had no recollection regarding the debtor's statement respecting the mortgage. Thereafter the debtor gave the L. Co. a trust deed to secure a debt due it. T. had nothing to do with the transaction, and at that time was not an agent or employé of the L. Co. *Held*, that the L. Co. was not charged with notice of the mortgage given by the debtor to his brother.
>
> [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 386–388; Dec. Dig. &169.]

In Bankruptcy. In the matter of J. R. Hereford, bankrupt. Upon certificate for review of the action of the referee in reference to the respective priorities of two trust deeds. Order affirmed.

Murray Briggs and Henry S. Cato, both of Charleston, W. Va., for petitioner.

Berkeley Minor, Jr., of Charleston, W. Va., for Lewis-Hubbard Co.

KELLER, District Judge. The certificate of the referee, W. G. Mathews, Esq., quite fully and clearly explains the question at issue and the contentions of the respective parties in relation thereto, and

it will be unnecessary to refer, except in one or two matters, to the testimony before the referee, which is returned with the certificate.

It appears that J. R. Hereford, the bankrupt, in September, 1913, was requested by Claude Sullivan, credit man for Hubbard Grocery Company, to call at his office to make a statement of his financial condition. Mr. Hereford did so call, and Mr. Sullivan, apparently of his own volition, called Mr. W. L. Tabscott, an employé of Lewis, Hubbard & Co., another wholesale grocery corporation, to be present; Mr. Hereford being a customer of both concerns.

It appears beyond doubt that at this conference Mr. Hereford informed Mr. Sullivan that he owed his brother, C. D. Hereford, $2,200, secured by mortgage on real estate. Mr. Tabscott made no memorandum of any of the information communicated by J. R. Hereford, and when he testified had no recollection of having known that a deed of trust or mortgage was mentioned in the statement. Mr. Tabscott, it appears, had been charged with no specific duties in relation to the Hereford account, was present almost incidentally, and had no recollection in regard to the item of information communicated to Mr. Sullivan in regard to the C. D. Hereford "mortgage" or trust deed. He not only had nothing to do with the transaction resulting in the giving of the trust deed to secure Lewis, Hubbard & Co. in the sum of $5,642.16, but was not at the time an agent or employé of the corporation.

Had Mr. Tabscott been an agent of the corporation in the negotiations resulting in the deed of trust of April 30, 1914, and had then forgotten (if he had ever known) the information conveyed to Mr. Sullivan by J. R. Hereford in September, 1913, the corporation would not be charged with notice; otherwise, if such information was present in his mind at the time of the transaction. 4 Thompson on Corporations, § 5200. To the same effect, see 2 Thompson on Corporations, § 1647.

Upon the whole case I conclude that the referee was correct in this order of December 7, 1915, and in his findings as set out in his certificate, and in view of the facts with reference to the amount of assets of this estate it becomes unnecessary to consider the otherwise very important matter raised by the petition of W. D. Guyer, trustee in bankruptcy, as to the alleged invalidity of the C. D. Hereford deed of trust as against general creditors.

The order of December 7, 1915, is affirmed in full.